# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

DAVID W. MONDS,

     Plaintiff,

v.                                                                  Civil Action No. 7:16-CV-130 (HL)

CITY OF QUITMAN, GEORGIA,

     Defendant.

## ORDER

Plaintiff David Monds initiated this action on July 18, 2016. (Doc. 1). He asserts a single cause of action for race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (Title VII), the Civil Rights Act of 1991, and 42 U.S.C. § 1981. Id. Specifically, Plaintiff alleges that Defendant engaged in unlawful employment discrimination by failing to hire Plaintiff because of his race. Id. Presently before the Court is Defendant's Motion for Summary Judgment. (Doc. 11). After reviewing the pleadings, briefs, depositions, and other evidentiary materials presented, and determining that there is no genuine dispute of material facts, the Court finds that Defendant is entitled to judgment as a matter of law and grants Defendant's motion.

## I. FACTUAL BACKGROUND

In May 2014, Plaintiff David Monds, a black man, applied for the position of City Clerk and Treasurer for the City of Quitman, Georgia. (Doc. 1, ¶ 16). Danny

Herring, the City Manager at the time, prepared the job announcement with the assistance of Janice Jarvis, the retiring City Clerk and Treasurer. (Doc. 11-2, p. 3). The announcement listed specific duties of the job, including the following:

> . . . develops internal controls and financial policies to promote effective governance and accurate receipts, disbursements and investments; coordinates external audit activities and audit preparation; researches technical accounting issues, ensures compliance with GAAP and prepares financial reports; prepares and delivers monthly internal management reports to communicate case flow, receipts, disbursements, investments and debt management activity. . .

(Doc. 11-10). The minimum requirements listed in the job announcement were "Bachelor Degree in Business or Public Administration, Accounting, Finance or related field. At least five (5) years experience in local government accounting and management preferred. Comparable combinations of education and experience will be considered." Id.

Plaintiff's resume indicated that he held a Bachelor of Science degree in Criminal Justice from Fort Valley State University and a Master of Science degree in Administration. (Doc. 11-10, p. 112). Plaintiff's application further demonstrated that he had a significant background in human resources management and that he was previously employed as a Human Resources Manager for the Federal Bureau of Prisons for four years. (Doc. 11-10, pp. 113-15).

The City of Quitman received numerous applications for the position. (Doc. 11-1, ¶ 24). Plaintiff was one of five candidates selected for an interview. (Doc. 11-2, p. 4). The other four candidates included Ms. Brunhilde Hudson (white female), Lee Carmichael (white male), Faye Walker (white female), and Mark DeVane (white male). Id. Plaintiff's interview took place on December 11, 2014, and was scheduled to be conducted by Herring, Virgil Walker (white councilman), Annie Bowers (white councilwoman), and Kendall Blankumsee (black councilman). Mr. Blankumsee, however, recused himself from Plaintiff's interview due to a conflict of interest resulting from Plaintiff's ongoing business relationship with Mr. Blankumsee's funeral home at the time of the interview. Id. Consequently, Plaintiff was interviewed by a three-person panel consisting of Herring, Bowers, and Walker.

During the interview, Virgil Walker inquired whether Plaintiff was familiar with GAAP (Generally Accepted Accounting Principles). (Doc. 11-10, p. 59). Plaintiff responded that he was unfamiliar with the term. Plaintiff was then asked about his prior experience with the Department of Justice. Id. Plaintiff asserts that no one specifically discussed the City Clerk and Treasurer job during his interview. Id.

On February 12, 2015, the City Council called a meeting. During the meeting, City Manager Herring recommended that the Council hire Ms. Brunhilde Hudson for the position of City Clerk and Treasurer. After some minimal discussion

regarding Ms. Hudson's qualifications, the City Council unanimously voted in favor of hiring Hudson as the City Clerk and Treasurer.

The next day, February 13, 2015, Plaintiff drove from Quitman to Atlanta to file a complaint with the Equal Employment Opportunity Commission (EEOC). The complaint asserts that in failing to hire Plaintiff, "City of Quitman (Employer) engaged in practice that discriminated against complainant (job applicant) on the basis of his race (African-American), sex (Male) and age (52)."[1] (Doc. 11-10, p. 153). On March 23, 2015, Herring wrote a letter in response to Plaintiff's EEOC charge to Ralph Cooper in which he explained why Hudson was hired for the position of City Clerk and Treasurer. (Doc. 11-11, p. 126). On March 1, 2016, Plaintiff requested a notice of right to sue from the EEOC, which was issued to him on May 18, 2016. (Doc. 1, ¶¶ 32-33). Plaintiff then filed his Complaint (Doc. 1) in this Court on July 18, 2016.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter

---

[1] Plaintiff submitted a separate claim summary along with his EEOC charge in which he writes that he was discriminated against on the basis of his race, sex, and age. (Doc. 11-10, p. 153). However, Plaintiff's Charge of Discrimination, Charge No. 410-2015-02306, listed only race and age as the basis of the claim. Plaintiff's Complaint (Doc. 1) alleges race discrimination only. Thus, Plaintiff has abandoned any discrimination claim on the basis of age.

of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 254-55. The court may not, however, make credibility determinations or weigh the evidence. Id. at 255; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. This evidence must consist of more than conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). In sum, summary judgment must be entered "against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322.

### III. DISCUSSION

Plaintiff alleges that Defendant discriminated against him on the basis of his race in violation of Title VII and § 1981. These statutes both "have the same requirements of proof and use the same analytical framework." <u>Standard v. A.B.E.I. Servs.</u>, 161 F.3d 1318, 1330 (11th Cir. 1998). Accordingly, the Court will address Plaintiff's Title VII claims with the understanding that the analysis also applies to the § 1981 claims.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a prima facie case of discrimination through either direct or circumstantial evidence. <u>Wilson v. B/E Aerospace, Inc.</u>, 376 F.3d 1079, 1085 (11th Cir. 2004). Claims of discrimination premised on circumstantial evidence, as is the present case, are evaluated under the burden-shifting framework developed in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Under this framework, the plaintiff first must set forth "facts adequate to permit an inference of discrimination." <u>Holifield v. Reno</u>, 115 F.3d 1555, 1562 (11th Cir. 1997). If the plaintiff is able to do so, the burden shifts to

the employer to articulate a legitimate, nondiscriminatory reason for its actions. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981). "If the employer satisfies its burden of articulating one or more reasons, then the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination." Wilson, 376 F.3d at 1087. The focused inquiry in the last step requires the plaintiff to demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action(s) that a reasonable factfinder could find them unworthy of credence." Rioux v. City of Atlanta, 520 F.3d 1269, 1276 (11th Cir. 2008) (citing Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal quotation marks and citation omitted)). At all times, the plaintiff retains the ultimate burden of persuading the finder of fact that the defendant acted with discriminatory intent. Burdine, 450 U.S. at 253.

To establish a prima facie case of disparate treatment failure-to-hire under the McDonnell Douglas framework and Title VII, the plaintiff must demonstrate that: (1) he was a member of a protected class; (2) he applied and was qualified for a position for which the employer was accepting applications; (3) despite his qualifications, he was not hired; and (4) the position or positions remained open or were filled by a person or persons outside of his protected class. See E.E.O.C.

v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1273 (11th Cir. 2002); Kragor v.
Takeda Pharms. Am., Inc., 702 F.3d 1304, 1308 (11th Cir. 2012).

### A. **Plaintiff's Prima Facie Case**

Defendant argues that Plaintiff cannot establish a prima facie case of race
discrimination because Plaintiff was not qualified for the position. (Doc. 11-2, p.
8). Specifically, Defendant argues that Plaintiff presented "no evidence that [he]
had any experience with finance and accounting to be qualified for the position of
City Clerk and Treasurer." Id.

Although, as Defendant asserts, "over one-half of the described duties related
directly to financial management of funds, accounting and bookkeeping work,
reconciling bank accounts, financial oversight, compliance and reporting,"
Plaintiff demonstrated that he had many of the requirements listed in the job
description. Id. Plaintiff has a Bachelor of Science degree in Criminal Justice, a
Master of Science in Administration, and an extensive work history with the
Bureau of Prisons. Further, Herring submitted in his deposition that Plaintiff was
interviewed because he "[was] from the community, originally. . . had a good
understanding of the community. . . [and] had the educational background" for
the position. (Doc. 11-11, pp. 62-63). Accordingly, the evidence shows that
Plaintiff is a member of a protected class as a black male; he applied and was
qualified for the City Clerk and Treasurer position; he was not hired; and the
position was filled by a person outside the protected class, a white female. The

Court finds that Plaintiff has established a prima facie case of discrimination under Title VII.

## B. Defendant's Legitimate, Non-discriminatory Reason

"After the Plaintiff proves a prima facie case of discrimination, the defendant need only to produce evidence that there is a legitimate, non-discriminatory reason for the challenged employment action." Kelliher v. Venerman, 313 F.3d 1270, 1275 (11th Cir. 2002). Defendant's burden at this stage is "exceedingly light." Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1060-61 (11th Cir. 1994) (internal quotation omitted). Defendant articulated the following non-discriminatory reasons for its employment decision: the job description states that the City of Quitman reserved the right to consider comparable combinations of education and experience, so the City may consider candidates "who may have had a lot of experience in the applicable field but not necessarily formal education (or vice versa)" (Doc. 18, p. 3); experience with finance and accounting practices and procedures was "a must for anyone to be qualified for the job" (Doc. 11-2, p. 8); Plaintiff had no relevant financial and accounting experience and was unfamiliar with the term "GAAP," which immediately indicated to the interviewing panel that he lacked the sought-after experience necessary for the job (Doc. 11-2, p. 9); and Hudson did possess the finance and accounting experience, which made her the most qualified candidate interviewed. Id.

Where "several candidates are well-qualified for a single position . . . the employer's testimony that it chose the person it thought best qualified" is ordinarily sufficient. Smith v. Horner, 839 F.2d 1530 (11th Cir. 1988). Here, Defendant has articulated legitimate, non-discriminatory reasons as to why Hudson was best qualified for the position of City Clerk and Treasurer. The burden of proof now shifts back to Plaintiff to prove by a preponderance of the evidence that Defendant's stated reasons are pretext for discrimination. Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1196 (11th Cir. 1997).

## C. Plaintiff's Proof of Pretext

Under the burden-shifting analysis described above, Plaintiff must show that Defendant's stated reasons were pretext for discrimination "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Turner v. Ga. Sec'y of State, 848 F. Supp. 2d 1361, 1374 (M.D. Ga. Jan. 30, 2012) (internal quotation marks and citations omitted). Where the defendant has articulated more than one legitimate, non-discriminatory reason, "the plaintiff must rebut each of the reasons to survive summary judgment." Id. at 1375.

Plaintiff has not met his burden. Plaintiff's response (Doc. 16) does not meet the Defendant's reasons "head on" and rebut them. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1088 (11th Cir. 2004) ("If the proffered reason is

one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it."). Instead, Plaintiff generally asserts that Herring and Bower "never got [their] story straight," and that Mayor Brown's story contradicts the accounts of Herring and Bower with regard to the decision to hire Hudson. (Doc. 16-1, pp. 7-13). The reasoning asserted by Plaintiff in support of his contention is not supported by the evidence on the record, nor does it directly address Defendant's proffered explanation for its hiring decision. Plaintiff further asserts that the declarations of Herring (Doc. 11-6), Blankumsee (Doc. 11-8), Walker (Doc. 11-7), and Bradley (Doc. 11-9) are unreliable, "consist largely of unfounded speculation," and "should be excluded as evidence." (Doc. 16-1, pp. 16-18). Plaintiff also argues that the declarations are inadmissible hearsay. (Doc. 16-1, p. 17).

As the Eleventh Circuit has stated, "[t]he general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment." Jones v. UPS Ground Freight, 683 F.3d 1283, 1293 (11th Cir. 2012) (internal quotation marks omitted). However, a district court may consider hearsay in deciding a summary judgment motion "if the statement could be reduced to admissible evidence at trial." Id. at 1293-94 (internal quotation marks omitted). Hearsay statements in an affidavit, for example, may be made admissible by calling the affiant to testify at trial. Id. at 1294. Here, the Court finds that the evidence

contained within the declarations could be presented in an admissible form at trial.

Plaintiff then lists six reasons why Defendant's proffered reasons are pretext: "(1) Herring's discriminatory recommendation; (2) deviated from the established hiring practice; (3) Council members could not believe Bru[n]hilde was more qualified; (4) Plaintiff's superior qualifications; (5) Mayor Brown admitted the Plaintiff's race was a factor; and (6) defendant's reason for not hiring [Plaintiff] shifted over time." (Doc. 16-1, p. 18).

First, Plaintiff argues that there is a "sufficient causal link between the decision to [not hire plaintiff] and the discriminatory animus behind Herring's recommendation." (Doc. 16-1, p. 19). In support of his argument, Plaintiff incorrectly cites Zaklama v. Mt. Sinai Medical Center, 842 F.2d 291 (11th Cir. 1988), for the proposition that "a [hire] recommendation by a party with no power to actually [hire] the employee may be actionable if the plaintiff proves that the recommendation directly resulted in the employee's [non-selection]." (Doc. 16-1, p. 19).[2] However, Zaklama is a case in which the Eleventh Circuit found that a hospital's dismissal of a physician from its residency program could be considered a "discharge" under Title VII and is factually distinct from the case at hand. 842 F.2d at 293-94.

---

[2] This quotation from Plaintiff's response is unchanged by the Court. All alterations appear in Plaintiff's original document.

Plaintiff also cites <u>Llampallas v. Mini-Circuits, Lab, Inc.</u> for the proposition that the "cat's paw" theory may be used to prove discriminatory animus. 163 F.3d 1236 (11th Cir. 1998). This theory applies when "the decisionmaker follow[s] [a] biased recommendation without independently investigating the complaint against the employee[,] [and] the recommender is using the decisionmaker as a mere conduit, or 'cat's paw' to give effect to the recommender's discriminatory animus." This is not a cat's paw theory case. <u>Stimpson v. City of Tuscaloosa</u>, 186 F.3d 1328, 1332 (11th Cir. 1999). Here, Herring made the recommendation to hire Hudson during the City Council meeting on February 12, 2015. Defendant proffers, and Herring's deposition confirms, that Hudson was recommended for the position because she had relevant experience with accounting and bookkeeping, she was the only applicant interviewed who had researched the position thoroughly by requesting a copy of the City's budget and ordinances before the interview, and she had experience working with local governments. (Doc. 11-1, ¶¶ 38-42); (Doc. 11-11, pp. 37-38, 76-77).[3] A formal discussion was held, during which Mayor Brown was the only person to vocalize opposition Hudson. Specifically, Mayor Brown questioned the length of Hudson's work

_____

[3] Plaintiff asserts that Herring discriminated against him by giving Hudson a copy of the documents "in an attempt to give [Hudson] an unfair advantage over [him]." (Doc. 16-1, p. 20). Contrarily, the record reflects that Hudson requested those documents herself and further, that the documents are available to all members of the public. (Doc. 11-11, pp. 36-38).

experience. (Doc. 16-1, p. 23); (Doc. 16-5, pp. 41-42). The City Council then voted unanimously to hire Hudson.[4]

The City Council is the "decisionmaker" within the cat's paw context, and Plaintiff has presented no evidence to suggest that the voting members of the City Council relied on Herring's recommendation and acted as a conduit for his "discriminatory animus." There is no evidence in the record to suggest that Hudson was recommended for any reason other than her skills and qualifications. Moreover, Plaintiff has presented no evidence that Herring possessed a discriminatory animus. Accordingly, Plaintiff's cat's paw theory is inapplicable, and his assertion that "Herring's discriminatory recommendation" is evidence of pretext is unsupported.

Plaintiff next argues that Defendant's deviation from established hiring practices establishes pretext. (Doc. 16-1, p. 18). Plaintiff does not point to any document outlining Defendant's hiring practices or show that Defendant followed a typical hiring routine. The basis of Plaintiff's argument is that Hudson did not meet the minimum requirements of the City Clerk and Treasurer position. Plaintiff quotes the City of Quitman Personnel Management Policies to define "examinations" and "minimum qualifications" in an attempt to formulate his own

---

[4] The voting members of the City Council were Bowers, Blankumsee, Walker, and Bradley. (Doc. 11-2, p. 6). Mayor Brown, though a participant in discussion, is not a voting member of the City Council unless there is a tie, and thus did not participate in the vote to hire Hudson. See Doc. 11-2, p. 6 n.2; Doc. 16-5, p. 65.

meaning of the "minimum requirements" listed in the City Clerk and Treasurer job description. Plaintiff also supports his argument by stating that Hudson's resume indicates she did not have the minimum qualifications necessary for the job and that Mayor Brown "testified he noticed some things were not as they should be during the hiring process." (Doc. 16-1, p. 23). Plaintiff further lists statements made by Mayor Brown that reflect Mayor Brown's personal views on the hiring decision made by the council, including Mayor Brown's opinion that "Herring provided discriminatory recommendations to the council for the position of City Clerk and Treasurer." Id. However, Mayor Brown was not a decisionmaker, and "remarks by non-decision makers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." Standard, 161 F.3d at 1330 (internal citation omitted). Thus, Plaintiff's frequent reliance on Mayor Brown's statements made during his deposition (Doc. 16-5) are irrelevant and do not aid Plaintiff in support of his various arguments for pretext.

Further, Plaintiff's argument that the City of Quitman deviated from normal hiring practices by hiring Hudson because the she did not have the minimum qualifications necessary for the position is founded solely on Plaintiff's erroneous reading of the "minimum requirements" listed in the job announcement. This argument, however, does not illustrate either: (a) what Defendant's hiring practices are; or (b) how Defendant deviated from that hiring practice in its hiring of Hudson. Elsewhere in his response, Plaintiff states "the two (2) African-

American Council members, Bradley and Blankumsee were excluded from Plaintiff's interview and relied on the discriminatory recommendation provided by Herring." (Doc. 16-1, p. 20). It is undisputed that Blankumsee participated in the other four interviews, but it is further undisputed that Blankumsee recused himself from Plaintiff's interview as he felt it would be a conflict of interest. There is no evidence to suggest that Blankumsee's recusal from Plaintiff's interview was the result of a discriminatory motive.

Even if Plaintiff could prove that a deviation occurred in the hiring process, Plaintiff has not shown evidence that the deviation occurred in a discriminatory manner. See Rojas v. Florida, 285 F.3d 1339, 1344 n.4 (11th Cir. 2002) ("To establish pretext, a plaintiff must show that the deviation from policy occurred in a discriminatory manner."); Carl v. Fulton County, Georgia, 2006 WL 11322929, at *20 (N.D. Ga. Dec. 16, 2008) (finding defendant's act of re-posting job listing did not violate or deviate from defendant's normal hiring policies). In order to succeed on this claim, Plaintiff would have to present evidence that Defendant's deviation from an actual hiring process was "specifically created to allow for race-based" hiring. Bond v. Cross Roads Hospitality Co. LLC, 2006 WL 3313736 (M.D. Ga. Nov. 13, 2006). Plaintiff has failed to present such evidence here.

Next, Plaintiff argues that Defendant "could not believe [Hudson] was more qualified" for the position of City Clerk and Treasurer than he, and that Plaintiff has "superior qualifications." (Doc. 16-1, p. 18). These arguments will be

addressed together. As a general matter, "[h]iring a less qualified person can support an inference of discriminatory motivation." Bass v. Bd. of Cty. Comm'rs., 256 F.3d 1095, 1107 (11th Cir. 2001). But "[a] plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer." Chapman v. AI Transportation, 229 F.3d 1012, 1030 (11th Cir. 2009) (emphasizing that "federal courts do not sit as a super-personnel department that reexamines an entity's business decisions .... [r]ather our inquiry is limited to whether the employer gave an honest explanation of its behavior." (internal quotation marks omitted)); see also Alexander v. Fulton Cty, Ga., 207 F.3d 1303, 1341 (11th Cir. 2000) (stating that "it is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not racially motivated").

Plaintiff asserts that "[Hudson]'s qualifications did not meet the minimum requirements vacancy announcement for the City Clerk and Treasurer requiring a bachelor degree and 5 years of experience." (Doc. 16-1, p. 24). Plaintiff further claims that Hudson did not complete high school and that her application has "conflicting information and unverifiable years of work." (Doc. 16-1, pp. 22-23). However, Plaintiff's contentions are misplaced. The Court agrees with Defendant in that the job announcement does not, as Plaintiff insists, state that a bachelor's degree is a minimum requirement of the position. The plain reading of the minimum requirements listed in the job description states "Bachelor Degree in

Business or Public Administration, Accounting, Finance or related field. At least five (5) years experience in local government accounting and management preferred. **Comparable combinations of education and experience will be considered**." (Doc. 11-10, p. 150) (emphasis added). It is the last sentence concerning comparable combinations of education and experience with which Plaintiff takes issue.

Herring clarifies both the plain and intended meaning of the sentence in response to questioning by Plaintiff during his deposition:[5]

> Q: Okay. Can you you can you tell what you agree concerning "Comparable?" What's your definition in reference to "Education?"
>
> A: Well, if it was just listed "Education," but I think it says "or in lieu of" or "considered" and "comparable" to me would be looking at one person's qualifications who may have a doctorate degree and one person that may have a degree in something else, but the other person has much more related work experience, work history, handling of certain situations where the other person may have never done that type of job, whatsoever, with a doctorate degree.

(Doc. 11-11, p. 32).

Later in the deposition when asked why he did not list a bachelor degree as a requirement for the City Clerk and Treasurer position in his response letter to the EEOC, Herring clarified that "it wasn't a specific requirement. It was "or" experience and education. . ." Id. at p. 36. Plaintiff continued to pose questions

_____

[5] The typographical, spelling, and grammatical errors contained in the transcript remain in the quoted material without correction.

related to the requirement of a bachelor degree during Herring's deposition, but it is clear from the plain reading of the job announcement itself that, contrary to Plaintiff's assertions, there is no bachelor degree requirement for the City Clerk and Treasurer position.

Although Hudson admittedly does not have a bachelor degree, she has, as her resume indicates, the German equivalent of a high school diploma and related financial experience pertinent to the position of City Clerk and Treasurer. (Doc. 11-10, pp. 172-73). Evidence on the record demonstrates that Hudson had significant experience with accounting, bookkeeping, and related financial work. (Doc. 11-2, pp. 5-6); (Doc. 11-11, pp. 76-77). It is undisputed that the majority of Plaintiff's work experience is more closely related to the field of human resources than that of finance and accounting.[6] It is also undisputed that Plaintiff possesses both a bachelor and master's degree, but to parallel Herring's illustration during his deposition quoted above, Hudson has relevant work experience that made her more qualified for the position despite Plaintiff's educational achievements. See Matthews v. City of Dothan, 2006 WL 3742237 (M.D. Ala. Dec. 18, 2006) (granting summary judgment because it was reasonable that the employer

---

[6] Plaintiff contends that his experience as a manager at a Waffle House restaurant for nine months gave him requisite accounting experience where he, as he explained in his deposition, "budget[ed] the funds, money. Purchase, pa[id] staff." (Doc. 11-10, p. 72). However, Plaintiff admittedly held this position over 30 years ago and did not include this information on his application or resume, nor did Plaintiff mention it during his interview. Id.; (Doc. 11-2, p. 5).

preferred financial abilities over plaintiff's legal education and experience in choosing its City Clerk-Treasurer).

"A plaintiff cannot prove pretext simply by arguing or even by showing that he was better qualified than the [person] who received the position he coveted." Springer v. Convergys Customer Management Group Inc., 509 F.3d 1344, 1349 (11th Cir. 2007). Rather, the plaintiff must show "that the disparity in qualifications is 'so apparent as to virtually jump off the page and slap you in the face.'" Cofield v. Goldkist, Inc., 267 F.3d 1264, 1268 (11th Cir. 2001) (internal quotations omitted). Plaintiff has not produced evidence that shows such a dramatic disparity between his qualifications and those of Hudson. Thus, the Court finds that Plaintiff has not met his burden in establishing that Defendant's reason for not hiring Plaintiff is pretextual.

Finally, Plaintiff's two remaining arguments may be addressed in summary fashion: that "Mayor Brown admitted that Plaintiff's race was a factor," and "defendant's reason for not hiring [Plaintiff] shifted over time." (Doc. 16-1, p. 18). As stated above, the opinions of Mayor Brown are irrelevant, and Plaintiff's argument that Mayor Brown admitted race was a factor in Defendant's decision to hire Hudson has no merit.

As to Plaintiff's final argument that Defendant's reason for not hiring Plaintiff shifted over time, it is true that "discrepancies and inconsistencies may cast doubt on a defendant's credibility." Turner, 848 F. Supp. 2d at 1376 (internal

citations omitted). However, to support his argument, Plaintiff relies on statements made by Mayor Brown which contradict Defendant's proffered reasoning for its hiring decision. Again, the statements made by Mayor Brown may not be considered. Further, Defendant never proffered anything inconsistent to its stated legitimate, non-discriminatory reasons for its employment decision. For these reasons, Plaintiff's final two arguments fail to establish pretext for discrimination.

Here, Plaintiff has failed to establish that Defendant's proffered reasons are unworthy of credence, or that Defendant was in any way motivated by a discriminatory reason in not hiring Plaintiff for the position of City Clerk and Treasurer. Defendant has offered ample evidence for why it made the hiring decisions it did, and Plaintiff has provided little to no evidence that race was a factor in either Herring's recommendation or the City Council's vote. Notwithstanding Plaintiff's attempts at rebuttal, Defendant's articulated legitimate, non-discriminatory reasons for its hiring decision were generally consistent with the evidence on the record, and there is no genuine issue of fact remaining for trial.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 11) is GRANTED.

**SO ORDERED** this 28th day of March, 2018.

s/ Hugh Lawson
**HUGH LAWSON, SENIOR JUDGE**

ehm